FILED

~~ 1 9, 2012

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CR. NO. _2:12cr21-WKW_ |
| v. | ) | [18 USC 1031 |
| | ) | 18 USC 1001 |
| | ) | 18 USC 2] |
| DANIEL W. CHATTIN and | ) | |
| MARK L. HILL | ) | INDICTMENT |

The Grand Jury charges:

### COUNTS 1-3
### (Major Fraud Against the United States)

#### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### Individuals and Entities

1.      Mountain Chief Management Services ("Mountain Chief") was a construction

services company that, at various times, had business addresses in Babb, Montana, and Crofton,

Maryland.  Among other things, Mountain Chief was certified by the United States government

as a Small Disadvantaged Business and an Indian-owned business.

2.      Defendant DANIEL W. CHATTIN, the son of the founder and president of

Mountain Chief, worked on behalf of Mountain Chief in a variety of capacities, including project

manager and consultant.  His responsibilities included, but were not limited to, management and

business development.

3.      Caddell Construction, Inc. ("Caddell") was a major commercial and industrial

federal government construction contractor with corporate headquarters in Montgomery,

Alabama.  Caddell had served as a prime contractor for many major design and build contracts

for the United States government, both domestically and internationally, including contracts with the United States Department of Defense ("Defense Department"), the United States General Services Administration, the United States Department of State, the United States Department of Energy, and the Federal Bureau of Prisons, all of which are agencies of the executive branch of the United States government.

4.    Defendant MARK L. HILL was employed by Caddell and was based in Caddell's Montgomery headquarters, with titles that at various times included Mentor-Protégé Program Coordinator, Estimator, and Director of Business Development.

## The Defense Department Incentive Programs

5.    The Defense Department administered certain programs designed to provide incentives for major Defense Department contractors to engage small disadvantaged businesses and minority-owned businesses as subcontractors and suppliers under Defense Department contracts and other contracts and subcontracts in order to increase the participation of those small business concerns as subcontractors and suppliers under Defense Department contracts, other federal government contracts, and commercial contracts.  Two such programs were the Mentor-Protégé Program and the Indian Incentive Program.

### The Mentor-Protégé Program

6.    The Mentor-Protégé Program provided incentives for major Defense Department contractors ("mentor firms") to contract with and help develop disadvantaged small business concerns ("protégé firms").  Under the Mentor-Protégé Program, the Defense Department reimbursed the mentor firm for costs the mentor firm incurred providing developmental assistance to its protégé firm.  In addition to the requests sent to the Defense Department by the

mentor firm for reimbursement of those costs, the mentor firm was required to report semiannually on the progress made under the mentor-protégé agreement and, among other things, describe the developmental assistance it had provided to the protégé firm, the number of employees working for the protégé firm, and the protégé firm's gross revenue.

## The Indian Incentive Program

7.      The Indian Incentive Program was designed to provide an incentive to prime government contractors to use Indian-owned businesses as subcontractors, to maximize the opportunity for such businesses to participate in performing contracts awarded by federal agencies.  Under the Indian Incentive Program, the Defense Department paid prime contractors five percent (5%) of the amount those prime contractors paid to an Indian-owned subcontractor performing a subcontract on a Defense Department contract.

## **Scheme and Artifice**

8.      CHATTIN and HILL engaged in a scheme to defraud the United States by making and causing to be made numerous material misrepresentations and omissions designed to mislead the United States into making inflated payments to Caddell under the Mentor-Protégé and Indian Incentive Programs.  Caddell in turn sent a portion of those payments to Mountain Chief.

## Misrepresentations in Mentor-Protégé Program Submissions

9.      In or about February 2003, Caddell entered into a mentor-protégé agreement ("the agreement") with Mountain Chief.  The agreement outlined specific areas of developmental assistance that Caddell would provide to Mountain Chief in connection with two contracts which Caddell had been awarded by the Defense Department for construction projects at Fort Bragg, North Carolina ("the Fort Bragg contracts").  Each of the Fort Bragg contracts had a value of

more than approximately $65 million. Caddell submitted the agreement to the Defense

Department, and the Defense Department approved Caddell's participation in the Mentor-Protégé

Program.

10.     Pursuant to the agreement, from in or about February 2004 through in or about

March 2005, HILL caused in excess of 20 requests to be submitted to the Defense Department

seeking payments to Caddell under the Fort Bragg contracts. As CHATTIN and HILL well

knew, those requests claimed, among other things, that Caddell had incurred costs that were

eligible for reimbursement under the Mentor-Protégé Program, that is, costs for providing

developmental assistance to Mountain Chief. Specifically, the requests included individual and

summary timesheets for certain employees of Caddell, including HILL, purporting to show the

hours those employees spent providing a variety of types of developmental assistance to

Mountain Chief. But as HILL and CHATTIN well knew, the payment requests greatly overstated

the amount of developmental assistance that Caddell had provided to Mountain Chief, if indeed

any had been provided at all.

11.     From in or about February 2004 through in or about March 2005, HILL and

CHATTIN also caused documents reporting on Mountain Chief's development as a protégé

company ("the Semi-Annual Reports") to be submitted to the Defense Department. The Semi-

Annual Reports falsely claimed that Mountain Chief had over 40 employees and over

$18,000,000 in annual gross revenues, and that Mountain Chief had realized or was in the

process of achieving certain technical capabilities and business infrastructure. As CHATTIN and

HILL well knew, however, Mountain Chief did not have 40 employees or $18,000,000 in annual

gross revenue, and had not achieved and was not in the process of achieving the capabilities or

infrastructure identified in the Semi-Annual Reports.

<u>Misrepresentations in Indian Incentive Program Payment Submissions</u>

12.    From in or about April 2003 through in or about October 2004, Caddell submitted at least eight requests to the Defense Department for Indian Incentive Program payments in connection with the two Fort Bragg contracts, as well as with a third Defense Department contract awarded to Caddell at Fort Campbell, Kentucky, which had a value of approximately $34 million.

13.    In these payment requests and in other oral representations, as CHATTIN and HILL well knew, Caddell represented to the Defense Department that Mountain Chief had performed on its subcontracts, and provided the Defense Department with evidence of that performance in the form of purported invoices from Mountain Chief "for services rendered" over a specified time period.  As CHATTIN and HILL well knew, however, those invoices were fabricated solely for the purpose of justifying Caddell's payment requests, and Mountain Chief was nothing more than a pass-through entity, receiving and appearing on paperwork for the purpose of obtaining payments under the Indian Incentive Program.

<u>Misrepresentations in Response to Defense Department Inquiries</u>

14.    To conceal the scheme and artifice, CHATTIN and HILL made multiple misrepresentations to Defense Department employees in response to questions about the relationship between Caddell and Mountain Chief.  For example:

    a.    In or about August 2004, CHATTIN sent a letter to the Defense Department purporting to describe the responsibilities and work performed by Mountain Chief on the Fort Bragg contracts.  Specifically, CHATTIN stated that

5

Mountain Chief was responsible for a variety of management and supervisory tasks such as scheduling and contract negotiation. As CHATTIN well knew, these representations were false, because Mountain Chief bore none of these responsibilities, and simply received paperwork from Caddell and signed it, thereby being nothing more than a pass-through entity used for the purpose of obtaining payments under the Indian Incentive Program.

b.     In or about January 2010, an official from the Defense Department's Army Office of Small Business Programs ("the Official") spoke with HILL on the telephone, and asked him questions about the relationship between Caddell and Mountain Chief and certain representations that appeared in the Semi-Annual Reports. During the call, HILL told the Official that to the best of his knowledge, Mountain Chief had received the full amount of training in the technology areas listed in the Semi-Annual Reports. As HILL well knew, however, Mountain Chief had not received the full amount of the training represented in the Semi-Annual Reports.

c.     In or about January 2010, the Official also called CHATTIN and asked him questions about the relationship between Caddell and Mountain Chief and certain representations that appeared in the Semi-Annual Reports. During the call, CHATTIN told the Official that Mountain Chief had 40 to 41 employees, that he sent Mountain Chief employees to the Caddell office in Montgomery, Alabama, for training, and that approximately 15 Mountain Chief employees had received training from Caddell. As CHATTIN well knew, however, Mountain

Chief did not have 40 to 41 employees, he had not sent any Mountain Chief

employees to Caddell's offices in Montgomery, Alabama for training, and he

himself had only been to Caddell's offices in Montgomery, Alabama a few times.

15.    As a result of the scheme and artifice described above, Caddell obtained

approximately $1.2 million from the United States under the Mentor-Protégé and Indian

Incentive Programs.

16.    On or about the dates shown below, in Montgomery County, Alabama, within the

Middle District of Alabama, and elsewhere, the defendants,

**DANIEL W. CHATTIN, and**
**MARK L. HILL,**

while aiding and abetting each other and aiding and abetting and being aided and abetted by

others known and unknown to the grand jury, did knowingly execute and attempt to execute the

scheme and artifice described above with the intent to defraud the United States and to obtain

money and property by means of false and fraudulent pretenses, representations, and promises, in

the procurement of property and services as a prime contractor with the United States, and as a

subcontractor and supplier on contracts in which there were prime contracts with the United

States valued in excess of $1,000,000:

| Count | Date | Execution of Scheme |
|-------|------|---------------------|
| 1 | January 26, 2005 | Approval and submission to the United States of Caddell's request for payment of $51,327 for 610 hours of "services rendered on the Mentor-Protégé Program" by Caddell employees |
| 2 | February 28, 2005 | Approval and submission to the United States of Caddell's request for payment of $33,028 for 369 hours of "services rendered on the Mentor-Protégé Program" by Caddell employees |

| 3 | March 24, 2005 | Approval and submission to the United States of Caddell's request for payment of $29,544.50 for 334 hours of "services rendered on the Mentor-Protégé Program" by Caddell employees |
|---|---|---|

All in violation of Title 18, United States Code, Sections 1031 and 2.

## COUNT 4
### (False Statement to the Defense Department)

17.     The Grand Jury realleges Paragraphs 1 through 15 as though fully stated herein.

18.     On or about January 26, 2010, in Montgomery County, Alabama, within the Middle District of Alabama, and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, defendant

**MARK L. HILL,**

knowingly and willfully made and caused to be made a material false, fictitious, and fraudulent statement and representation, that is, during the course of an official investigation being conducted by the Defense Department and the General Services Administration, defendant HILL falsely stated in substance that to the best of his knowledge Mountain Chief received the full breadth of all the training reported in the Semi-Annual Reports, when, as defendant HILL well knew, Mountain Chief employees had not received all of the training reported and Caddell was not mentoring Mountain Chief employees for all of the hours reported to the government.

All in violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

_____Cynthie Durden_____
FOREPERSON


DENIS J. MCINERNEY
Chief, Fraud Section

By: _____
Albert B. Stieglitz, Jr.
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice


SANDRA M. STEWART
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

By: _____
Andrew O. Schiff
Assistant United States Attorney

9